**Slip Op. 21-99**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

─────────────

**Court No. 20-00096**

─────────────

LG CHEM, LTD., *et ano.*,

*Plaintiffs*,

v.

UNITED STATES,

*Defendant*,

and

COALITION FOR ACETONE
FAIR TRADE,

*Defendant-Intervenor.*

─────────────

Before: M. Miller Baker, Judge

## OPINION

[The court denies Plaintiffs' motion for judgment on
the agency record and grants judgment for Defendant
and Defendant-Intervenor.]

Dated: August 13, 2021

*Daniel L. Porter* and *James P. Durling*, Curtis, Mallet-
Prevost, Colt & Mosle LLP of Washington, DC, argued
for Plaintiffs. With them on the reply brief was *James
C. Beaty*.

*Kyle S. Beckrich*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, argued for Defendant. With him on the brief were *Brian M. Boynton*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; and *Tara K. Hogan*, Assistant Director. Of counsel on the brief was *Hendricks Valenzuela*, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

*Daniel L. Schneiderman*, King & Spalding, LLP, of Washington, DC, argued for Defendant-Intervenor. With him on the brief was *Stephen J. Orava.*

   *Baker*, Judge: In this case, a Korean acetone producer challenges its antidumping duties, arguing that the Department of Commerce improperly calculated its cost of production and impermissibly rejected certain factual submissions. The court concludes that the producer's challenge to Commerce's cost calculation fails, and that any error in rejecting the producer's factual submissions was harmless. The court therefore sustains the Department's decision imposing antidumping duties.

## Statutory Background

   The Tariff Act of 1930, as amended, provides a mechanism to combat dumping, that is, the sale of imported merchandise in the United States at "less than its fair value." 19 U.S.C. § 1673(1). Under the statute, domestic producers and other affected entities can petition Commerce and the International Trade Commission to investigate alleged dumping and its effects

on U.S. industry. If Commerce determines that dumping is occurring, and the ITC determines that such dumping is injuring domestic industry, the former can impose antidumping duties.

To determine whether dumping is occurring, the statute requires Commerce to make "a fair comparison" between the price charged by the foreign producer-exporter to U.S. customers "and normal value." 19 U.S.C. § 1677b(a). "Normal value" is generally "the price a producer charges in its home market." *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010); *see also* 19 U.S.C. § 1677b(a)(1)(B)(i) (defining normal value by reference to home market sales "in the ordinary course of trade"). Commerce calculates an antidumping margin based on the difference between the U.S. customer price and the normal value. *Uttam Galva Steels Ltd. v. United States*, 997 F.3d 1192, 1194 (Fed. Cir. 2021).

In determining "normal value" based on the home market sales price, Commerce may disregard sales made for "less than the cost of production." 19 U.S.C. § 1677b(b)(1). The statute defines the cost of production as "the sum of" three distinct categories of costs, *id.* § 1677b(b)(3), two of which (as relevant here) are "the cost of materials and of fabrication or other processing of any kind," *id.* § 1677b(b)(3)(A), and overhead costs described as "selling, general, and administrative expenses," *id.* § 1677b(b)(3)(B).

If, after disregarding home country sales made at less than the cost of production, "no sales made in the ordinary course of trade remain," *id.* § 1677b(b)(1),

then Commerce must base "normal value . . . on the constructed value of the merchandise," *id*. The statute also allows Commerce to base normal value on "constructed value" if for any reason the Department cannot determine the normal value of the imported goods using the sales price in the home country pursuant to § 1677b(a)(1)(B)(i). *See id*. § 1677b(a)(4).

Constructed value, defined in 19 U.S.C. § 1677b(e), and the cost of production, defined in § 1677b(b)(3), "are closely related." *Saha Thai Steel Pipe (Pub.) Co. v. United States*, 635 F.3d 1335, 1338 (Fed. Cir. 2011). Constructed value under § 1677b(e) "generally includes the same or similar elements as [cost of production defined in § 1677b(b)(3)], but with the additional component of profit." *Id*. (citing § 1677b(e)); *see also Uttam Galva*, 997 F.3d at 1194 ("Constructed value is essentially the cost of production plus profit." (citing § 1677b(e))).

Whether Commerce calculates the cost of production pursuant to § 1677b(b)(3) for determining normal value, or instead pursuant to § 1677b(e) for determining constructed value, "[f]or purposes of" both provisions

> [c]osts shall normally be calculated based on the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles of the exporting country (or the producing country, where appropriate) and reasonably reflect the costs associated with the production and sale of the merchandise.

*Id.* § 1677b(f)(1)(A).

## Factual and Procedural Background

In 2019, the Coalition for Acetone Fair Trade—a group of several domestic acetone producers—petitioned Commerce asserting that producers in Korea and several other countries were dumping acetone in the U.S. market. Appx1000. In response, Commerce commenced several antidumping investigations covering calendar year 2018. *Acetone from Belgium, the Republic of Korea, the Kingdom of Saudi Arabia, Singapore, the Republic of South Africa, and Spain: Initiation of Less-Than-Fair-Value Investigations*, 84 Fed. Reg. 9755, 9756 (Dep't Commerce Mar. 18, 2019).

As relevant here, Commerce selected two Korean producers, LG Chem, Ltd.,[1] and Kumho P&B Chemicals, Inc., as mandatory respondents. Appx1569; Appx1461.[2] Commerce then issued questionnaires to both companies requesting information on various topics, including—in accordance with the statutory requirement that "[c]osts shall normally be calculated based on the records of the exporter or producer," 19 U.S.C. § 1677b(f)(1)(A)—information on how they

---

[1] The investigation of LG Chem also included one of its corporate affiliates, LG Chem America, Inc., co-plaintiff in this action. For convenience, the court refers to them collectively as LG Chem.

[2] For an explanation of the role mandatory respondents play in antidumping investigations, *see New Am. Keg v. United States*, Ct. No. 20-00008, Slip Op. 21-30, at 5–6, 2021 WL 1206153, at *2 (CIT Mar. 23, 2021).

calculate their "cost[s] of materials and of fabrication or other processing of any kind," *id*. § 1677b(b)(3)(A).

LG Chem's and Kumho's questionnaire responses revealed that they calculate their costs of materials and processing using two different methodologies. ECF 36, at 8–9. To understand them, it is helpful to understand how both companies produce acetone using the "cumene process." Appx1576.

The cumene process requires two inputs, benzene and propylene. Appx1576. These inputs react to form a new molecule, cumene. *Id*. The cumene molecule has a part corresponding to each input: a benzene part and a propylene part. *Id*. The cumene molecule breaks down to create two outputs, phenol and acetone. *Id*. The benzene part of the cumene molecule becomes phenol, and the propylene part of the cumene molecule becomes acetone. *Id*. In sum, the benzene input becomes the phenol output, and the propylene input becomes the acetone output. The following diagram describes this process visually in material part:



Appx1576 (describing chemical process); ECF 36, at 8 (containing diagram).

Kumho allocates its cost of materials and processing based on what the parties call a "direct-assignment methodology," which essentially states that the cost of acetone equals the cost of the *input*, propylene, contained within the acetone. Appx1576.

By contrast, LG Chem allocates its cost of materials and processing based on what the parties call a "value-based" methodology, which allocates the *joint* costs for the benzene and propylene inputs between acetone and phenol based on the "net realizable value" of the acetone and phenol *outputs*. *Id.* That is, LG Chem first determines the relative value of the acetone and phenol outputs, and then applies the ratio of those respective values to allocate the joint input costs of propylene and benzene between the acetone and phenol outputs.[3] To calculate the net realizable value of acetone and phenol, LG Chem's methodology relies on the prices of acetone and phenol in China. Appx1467; Appx1576.

After receiving this (and other) information, the Department preliminarily determined that acetone

---

[3] To illustrate, assume that LG Chem's cumene process yields 100 kilograms of acetone priced at $5.00 per kilogram (totaling $500.00 in value) and 30 kilograms of phenol priced at $10.00 per kilogram (totaling $300.00 in value). The "net realizable value" of the coproducts produced by the cumene process is $800.00. In this hypothetical, five-eighths of the joint production costs of the cumene process would be assigned to acetone, and three-eighths would be assigned to phenol.

imported from Korea was being dumped in the United States at less than fair value and assigned LG Chem, the plaintiff in this case, a 7.67 percent estimated weight-averaged dumping margin. *Acetone from the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 84 Fed. Reg. 50,005, 50,005–06 (Dep't Commerce Sept. 24, 2019); Appx1452. In contrast, the Department assigned a much steeper 47.70 percent dumping margin to Kumho. 84 Fed. Reg. at 50,006; Appx1452.

In assigning LG Chem's preliminary dumping margin, Commerce concluded that certain aspects of the company's cost of production of acetone were "not appropriately quantified or valued." Appx1467.[4] As

---

[4] Commerce's preliminary determination memorandum stated that the Department calculated the cost of production pursuant to § 1677b(b)(3), Appx1464, and (incongruously) that it calculated normal value based on constructed value (where the cost of production is calculated pursuant to § 1677b(e)), *id.* In any event, the cost of production provisions under § 1677b(b)(3) and § 1677b(e) are materially identical except for the latter's inclusion of profits, and both (as discussed in detail below) are subject to § 1677b(f)(1)(A). *Cf. Dillinger France S.A. v. United States*, 981 F.3d 1318, 1321 n.1 (Fed. Cir. 2020) (observing that it was unclear in Commerce's final decision whether the Department's "calculation of normal value involved determining constructed value (determining the sum of 'the cost of materials and fabrication or other processing of any kind employed in producing the merchandise' and other factors under 19 U.S.C. § 1677b(e)), or involved determining cost of production so as to exclude home market sales made

relevant here, the Department identified two specific problems.

First, LG Chem's value-based methodology relied on Chinese non-market economy prices to determine the net realizable value of the acetone and phenol outputs. Appx1467–1468. Commerce accordingly swapped out the Chinese pricing data for Southeast Asian pricing data from market economies, *id.*, while otherwise retaining the company's value-based methodology.

Second, LG Chem improperly excluded certain company-wide overhead costs from its calculation of "general and administrative expenses," 19 U.S.C. § 1677b(b)(3)(B). Appx1468. Commerce therefore included those expenses in its cost calculations. *Id.*

After issuing its preliminary determination, Commerce received full briefing from the parties and held a public hearing. Thereafter, the Department issued a final decision reaffirming its preliminary determination that Korean producers were dumping acetone in the United States. In so doing, however, Commerce assigned LG Chem a substantially higher 25.05 percent estimated weight-averaged dumping margin. *Acetone from Belgium, the Republic of South Africa, and the Republic of Korea: Antidumping Duty Orders*, 85 Fed. Reg. 17,866, 17,866 (Dep't Commerce Mar. 31, 2020); Appx1661; *see also Issues and Decision Memorandum for the Final Affirmative Determination in the Less-*

---

below cost of production under § 1677b(b)(3)," but that § 1677b(f) applies "[i]n either event").

*Than-Fair-Value Investigation of Acetone from the Republic of Korea* (Feb. 6, 2020), Appx1568–1585.

As relevant here, Commerce explained that in accordance with 19 U.S.C. § 1677b(f)(1)(A), it "normally relies on data from a respondent's . . . books and records" to calculate costs, and in its preliminary determination it had found that "LG Chem's reported costs did not reasonably reflect the cost associated with the production and sales of acetone because [among other reasons] the joint cost allocation factors were based on non-market economy prices." Appx1576. Based on that finding, the Department's preliminary determination had adjusted LG Chem's joint costs for acetone and phenol based on Southeast Asian market index prices in lieu of the Chinese price index used by the company. Appx1576–1577.

Commerce then noted that although its preliminary determination had accepted LG Chem's value-based methodology (*as adjusted* using Southeast Asian rather than Chinese prices), for the final determination the Department had "reevaluated whether it is appropriate" to use that methodology to determine the company's acetone production costs "considering specific facts surrounding this investigation." Appx1577.

Commerce explained that a value-based methodology such as LG Chem's "can be problematic in an antidumping context." *Id.* First, there is the problem of "circularity," meaning that "prices are used to determine the product-specific costs which in turn are either compared to those same prices or are used to construct prices (*i.e.*, through the sales-below-cost test

and constructed value)." *Id*. Second, "market factors may also create problems with using prices as a basis of allocation," including "volatile market prices" and "temporary surges in supply and demand." *Id*. Finally, "the statute directs Commerce to determine the actual cost to produce the merchandise under consideration and establishes that cost as a floor for the comparison prices." *Id*.

Commerce also observed that although it previously accepted the value-based methodology in certain cases involving the joint production of coproducts, in view of these problems it did so "as a last resort because using an alternative methodology such as a volume-based or a direct assignment allocations [*sic*] were [*sic*] either not possible or would lead to an unreasonable result." *Id*. None of those cases involved fact patterns such as this case's, "where the inputs consumed in the joint production process can be clearly traceable to specific-output coproducts." *Id*. The Department explained how "acetone and phenol are produced from the same joint production process where . . . the benzene portion of the cumene molecule becomes phenol and the propylene portion of the cumene molecule becomes acetone through the purification process." Appx1578.

Commerce concluded that it was still "distortive and unreasonable to rely on the value-based allocation methodology used in LG Chem's normal books and records," even as adjusted by the preliminary determination's use of Southeast Asian rather than Chinese prices, for three reasons. *Id*.

First, LG Chem's use of a third-party price index to determine the value of its acetone and phenol coproducts created the problem of "circularity" described above. *Id.* Second, because of price volatility in the Southeast Asian prices used by Commerce in its preliminary determination to adjust the company's costs, "the potential problems inherent in the value-based allocation methodology still [were] not eliminated." *Id.* Finally, in view of these circularity and price volatility problems, it was "distortive and unreasonable to rely on the value-based allocation methodology used in LG Chem's normal books and records, particularly when the production process in this case allow[ed] for an accurate tracing of input raw materials to the output finished products (i.e., [Kumho's] direct assignment methodology)." *Id.*

Because of these problems, Commerce applied Kumho's direct-assignment methodology, which used "a formula that incorporates the cost of the propylene input (*i.e.*, the component of cumene that eventually becomes acetone) . . . . Under this approach, propylene costs are assigned to acetone, whereas benzene costs are assigned to phenol." *Id.* (footnote reference omitted). The Department stated that it found this "formula reasonable because it recognizes the actual chemical reactions associated with acetone production, the relative quantity and value of propylene contained in acetone, and the relative production quantity of acetone during" the relevant period. *Id.*

Finally, Commerce stated that it would adhere to its previous conclusion (in the preliminary determination) that LG Chem's calculation of its acetone

production costs had improperly excluded various
company-wide general and administrative costs, and
the Department therefore included those costs in cal-
culating LG Chem's dumping margin. Appx1584–
1585.

LG Chem thereafter brought this action under
19 U.S.C. § 1516a to contest Commerce's final deci-
sion. *See* ECF 10 (complaint). LG Chem now moves for
judgment on the agency record. ECF 38; *see also*
USCIT R. 56.2. The government and the Coalition op-
pose. ECF 37 (government); ECF 36 (Coalition). The
court thereafter heard oral argument. ECF 41.

## Jurisdiction and Standard of Review

The court has subject-matter jurisdiction pursuant
to 28 U.S.C. § 1581(c).

In actions such as this brought under 19 U.S.C.
§ 1516a(a)(2)(A)(i)(II), "[t]he court shall hold unlawful
any determination, finding, or conclusion found . . . to
be unsupported by substantial evidence on the record,
or otherwise not in accordance with law . . . ." 19 U.S.C.
§ 1516a(b)(1)(B)(i).

As to evidentiary issues, the question is not
whether the court would have reached the same deci-
sion on the same record—rather, it is whether the ad-
ministrative record as a whole permits Commerce's
conclusion, even if the court might have weighed the
evidence differently:

> Substantial evidence has been defined as more
> than a mere scintilla, as such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

## Discussion

### I.

The principal issue raised in LG Chem's motion is Commerce's adjustment of the company's costs using Kumho's direct-assignment methodology. ECF 38, at 22. LG Chem first argues that 19 U.S.C. § 1677b(f)(1)(A) creates a presumption in favor of using a respondent's records to calculate the cost of production, and that Commerce can depart from those records only if they are not kept in accordance with the exporting country's generally accepted accounting principles, or if they do not reasonably reflect a respondent's cost of production. ECF 38, at 22–28.

As the first of the two statutory requirements is not at issue here,[5] LG Chem challenges Commerce's conclusion that the company's value-based methodology—*as adjusted* by the preliminary determination's substitution of Southeast Asian prices for Chinese prices—

---

[5] It is undisputed that LG Chem's value-based cost allocation methodology is consistent with generally accepted accounting principles in Korea.

still did not reasonably reflect the cost of production. *Id*. at 28–48. LG Chem argues that Commerce's conclusion is not supported by substantial evidence, and as a result, the Department's *further* adjustment of its costs in the final decision by using Kumho's direct-assignment methodology is unlawful. *Id*.

## A.

As a threshold matter, the Coalition disputes how LG Chem has framed the issue. The Coalition observes that the company "[does] not contend that Commerce erred in rejecting LG Chem's use of [Chinese] prices and in reallocating costs" using Southeast Asian prices. ECF 36, at 10. "To the contrary, [LG Chem] argue[s] that this adjustment (made in the preliminary determination) already remedied any significant distortions in reported costs, thereby obviating the need to jettison a sales value-based allocation in favor of direct assignment." *Id*. at 10 (citing ECF 38, at 41).

As a result, the Coalition argues, there is no dispute that Commerce permissibly departed from LG Chem's records in calculating the cost of production. *Id*. at 11. Thus, according to the Coalition, the issue here is not whether Commerce's departure from the company's records was warranted—the issue is Commerce's choice between two different departures: (1) the preliminary determination's substitution of Southeast Asian prices for Chinese prices, and (2) the final decision's substitution of the Kumho direct-assignment methodology for the value-based methodology. *Id*. at 11–12.

This framing is significant, the Coalition argues, because where (as here) an adjustment is appropriate due to a respondent's records not reasonably reflecting the cost of production, 19 U.S.C. § 1677b(f)(1)(A) imposes no impediment to Commerce's discretionary choice of the most reasonable adjustment. *Id.* at 12. Therefore, to justify its adjustment using the Kumho direct-assignment methodology, in the final decision "Commerce was obligated only to show that the originally reported costs were distorted (a point that is uncontested), not that the costs as reallocated in the preliminary determination were still distorted notwithstanding the elimination of nonmarket pricing." *Id.*[6]

On reply, LG Chem responds that Commerce's cost adjustment in its preliminary determination (swapping out Chinese prices for Southeast Asian prices while retaining the company's value-based methodology) and its later decision to abandon the company's methodology altogether "were made pursuant to separate legal authority with different legal requirements." ECF 39, at 12.

Specifically, LG Chem observes that Commerce invoked 19 U.S.C. § 1677b(b)(3) in adjusting costs in its preliminary determination. *See* ECF 39, at 12–13 (citing Appx1464). The company then argues that unlike

---

[6] The government, for its part, does not challenge LG Chem's framing of the issue; instead, the government argues that substantial evidence supports Commerce's conclusion in the final decision that the company's value-based methodology remained unreasonably distorted even after the replacement of nonmarket Chinese pricing with Southeast Asian pricing. *See* ECF 37, at 26–33.

§ 1677b(f)(1)(A), § 1677b(b)(3) "does not address the reasonability of the method used by the respondent before making an adjustment." ECF 39, at 13. It further argues that Commerce's preliminary determination accepted its value-based methodology as reasonable, and "only adjust[ed] the benchmark [the price index] that feeds into the methodology pursuant to 19 U.S.C. § 1677b(b)(3), a different section of the statute with different legal requirements." *Id*. at 14.

What LG Chem overlooks, however, is that § 1677b(f)(1)(A) reads onto § 1677b(b)(3). The former provides:

**(f) Special rules for calculation of cost of production and for calculation of constructed value**

For *purposes of subsections (b)* and (e)—

**(1) Costs**

**(A) In general**

Costs shall normally be calculated based on the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles of the exporting country (or the producing country, where appropriate) and reasonably reflect the costs associated with the production and sale of the merchandise.

19 U.S.C. § 1677b(f)(1)(A) (emphasis added).

Thus, § 1677b(f)(1)(A) requires that Commerce undertake cost of production calculations under § 1677b(b)(3) and § 1677b(e)[7] based on the respondent's records, "if such records . . . reasonably reflect the costs associated with the production and sale of the merchandise." *Id.* Consistent with this reading of the statute, Commerce's final decision explained that its preliminary determination "found that LG Chem's reported costs did not *reasonably reflect* the cost associated with the production and sales of acetone because the joint cost allocation factors were based on non-market economy prices." Appx1576 (emphasis added). Therefore, contrary to the company's argument, Commerce's adjustment of its costs in the Department's preliminary determination was very much an exercise of § 1677b(f)(1)(A) authority, because Commerce read § 1677b(b)(3) through the prism of § 1677b(f)(1)(A) as the statute requires.

That said, there remains the question of the meaning of § 1677b(f)(1)(A). The statute directs Commerce to calculate costs under § 1677b(b)(3) and § 1677b(e) using a producer's records, "*if* such records are kept in accordance with the generally accepted accounting principles . . . *and* reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A) (emphasis added).

The statute unambiguously imposes two binary yes/no conditions—*either* the respondent's records (1) "are kept in accordance with the generally accepted accounting principles" *and* (2) "reasonably reflect the

---

[7] *See above* note 4.

costs associated with the production and sale of the merchandise," *or* they do not. *Id.*; *see also Dillinger*, 981 F.3d at 1321–22 ("The dual nature of the test seems apparent from the face of the statute and is clear as well from our prior decisions and the legislative history."). Once Commerce concludes that a producer's records do not satisfy one of these conditions—which the Department did in its preliminary determination, a finding that is undisputed here—the statute relieves it of any further obligation to use those records in adjusting costs.

One might argue that 19 U.S.C. § 1677b(f)(1)(A) should be read to permit Commerce to make cost of production adjustments only *insofar* as a respondent's records do not satisfy the statute's two conditions. Such an interpretation, however, is impermissible.

The statute's text does not qualify the two conditions with "insofar," "to the extent," or similar language that in effect would operate as a severability clause, requiring Commerce to apply whatever portion of a producer's cost calculations that might be salvaged. Instead, the statute uses binary yes/no conditions, presumably as a matter of administrative convenience. Diluting the force of those binary conditions with qualifiers violates the omitted-case canon, the principle that an "absent provision cannot be supplied by the courts." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012); *cf. Comm'r v. Asphalt Prods. Co.*, 482 U.S. 117, 120 (1987) (tax statute that provided for 5 percent underpayment penalty "if any part of any underpayment" were due to negligence

could not be read as limiting the penalty to the portion of the underpayment due to negligence).

In § 1677b(f)(1)(A), Congress directed Commerce to "normally" use a respondent's records in calculating costs *if* two conditions were satisfied. No conclusion can be drawn from the statute other than that if either of those conditions were unsatisfied, Congress desired Commerce to adjust the respondent's costs as necessary (in the Department's discretion) to ensure the most accurate dumping margin.

At oral argument, LG Chem's counsel stated that the company does not dispute the reasonableness of Commerce's adjustment of its costs using Kumho's direct-assignment methodology—that is, that Commerce's choice of the direct-assignment methodology is supported by substantial evidence. Instead, LG Chem contends that the statute precluded Commerce from making that choice unless the Department permissibly found that the company's value-based methodology—*as adjusted by Commerce using Southeast Asian market prices*—was unreasonable. The company argues that the Department's finding to that effect was not supported by substantial evidence.

But LG Chem does not challenge the Department's conclusion that the company's use of Chinese pricing rendered its value-based methodology unreasonable. Because that determination is uncontested, the statute did not require Commerce to undertake a severability analysis to determine whether the company's methodology could be saved with use of another pricing index. Therefore, the court need not determine

whether substantial evidence supported Commerce's determination that LG Chem's methodology, as adjusted in the preliminary determination with Southeast Asian prices, *still* did not reasonably reflect the company's costs.

Instead, the Department having made the unchallenged determination that LG Chem's use of Chinese pricing rendered its methodology unreasonable, the statute allowed Commerce to adjust the company's costs in whatever manner the Department thought advisable. Contrary to LG Chem's argument, there was no statutory impediment to Commerce's replacement of the company's value-based methodology with Kumho's direct-assignment methodology in the final decision.

## B.

Commerce, of course, decided this matter on a different basis, i.e., that LG Chem's value-based methodology—as adjusted with Southeast Asian prices—still did not reasonably reflect the cost of production. Appx1577–1578. Nevertheless, the court can affirm on a ground not addressed by the Department where "the agency would have reached the same ultimate result under the court's legal theory," provided that "there is no room for the agency to exercise discretion in deciding the legal issue under review." *Grabis v. Off. of Pers. Mgmt.*, 424 F.3d 1265, 1270 (Fed. Cir. 2005) (cleaned up); *see also McCarthy v. Merit Sys. Prot. Bd.*, 809 F.3d 1365, 1373 (Fed. Cir. 2016); *In re Comiskey*, 554 F.3d 967, 974–75 (Fed. Cir. 2009).

In concluding that 19 U.S.C. § 1677b(f)(1)(A) permitted Commerce to adjust LG Chem's costs using Kumho's direct-assignment methodology based on the Department's unchallenged finding that use of Chinese pricing rendered the value-based methodology distortive, the court does not tread upon Commerce's authority to interpret the statute. Under the familiar "step one" of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), there is no room for the agency to exercise discretion (and hence no deference) when "traditional tools of statutory construction" make it clear that Congress "has directly spoken to the precise question at issue." *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1362 (Fed. Cir. 2005).

Here, employing traditional tools of statutory construction, the court concludes that § 1677b(f)(1)(A) unambiguously imposes two binary yes/no conditions. Once Commerce found in its preliminary determination that LG Chem's records did not satisfy either of these binary conditions, the statute relieved the Department of any further obligation to use those records in adjusting the company's costs. No exercise of the Department's interpretative authority was necessary here, as Congress has directly spoken to the precise question at issue.

## C.

LG Chem's opening brief argues—in passing, and without citation to authority—that Commerce's final decision needed to explain the Department's change in approach from the preliminary determination. *See*

ECF 38, at 41–42. LG Chem fleshes out this argument in its reply with citations to authority. *See* ECF 39, at 14.

This argument is unavailing. To begin with, LG Chem waived it by only raising the argument in passing in its opening brief. *See I.D.I. Int'l Dev. & Inv. Corp. v United States*, Ct. No. 20-00107, Slip Op. 21-82, at 32, 2021 WL 3082807, at \*11 (CIT July 6, 2021) ("Passing references do not raise arguments.") (citing *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1325 n.6 (Fed. Cir. 2012)).

In any event, any error by Commerce in failing to adequately explain its change of view amounted to harmless error because, as discussed above, it is undisputed here that (1) LG Chem's value-based methodology did not reasonably reflect its cost of production due to its use of Chinese prices and (2) the Department's adjustment of LG Chem's costs using Kumho's direct-assignment methodology was supported by substantial evidence. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 659–60 (2007) ("In administrative law, as in federal civil and criminal litigation, there is a harmless error rule[.]") (quoting *PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004)).[8] Because the statute did not require

---

[8] Section 706 of the Administrative Procedure Act provides that when a court hears a challenge to an agency action, "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. Section 706 thus "requires application of a traditional harmless-error analysis and . . . the person seeking relief from the error has the burden of showing

Commerce to determine that LG Chem's methodology, as adjusted with Southeast Asian prices, was still unreasonable, any deficiency in the Department's explanation for its change of view was not prejudicial.

## II.

The second issue raised in LG Chem's motion is Commerce's rejection—after its preliminary determination—of certain factual information submitted by the company as untimely. *See* Appx1484 (Commerce's explanation of its rejection). Commerce did not consider this information in rendering its final decision.

LG Chem now contends that Commerce erred as a matter of law in rejecting its factual information as untimely, ECF 38, at 13–15, or alternatively abused its discretion in so doing, *id.* at 15–22. The government contests both propositions on the merits. ECF 37, at 13–23. The Coalition, for its part, argues that the court should not consider this issue because the company failed to raise it before Commerce's final decision

---

prejudice caused by the error." *Suntec Indus. Co. v. United States*, 857 F.3d 1363, 1368 (Fed. Cir. 2017) (citing *Shinseki v. Sanders*, 556 U.S. 396, 406, 409 (2009)). In this case brought under 28 U.S.C. § 1581(c), review "is under 28 U.S.C. § 2640(b), which does not expressly refer to section 706. Even so, section 706 review applies since no law provides otherwise." *SolarWorld Ams., Inc. v. United States*, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) (citing *Dickinson v. Zurko*, 527 U.S. 150, 154 (1999)).

and thereby failed to exhaust its administrative remedies. ECF 36, at 4–7.[9]

Curiously, the parties do not describe the actual substance of the factual information rejected by Commerce,[10] but pulling the curtain back reveals that any error by the Department was harmless. Commerce required LG Chem to withdraw factual information supporting the propositions that (1) LG Chem's value-

---

[9] Congress has mandated that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). This provision "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).

"The [statutory] requirement that invocation of exhaustion be 'appropriate,' however, requires that it serve some practical purpose when applied." *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013). Here, the government is conspicuously agnostic on the question of exhaustion—at argument, it confirmed that it takes no position. In the court's view, the government's agnosticism is tantamount to a concession "that additional filings with [Commerce] would [have been] ineffectual." *Id.* at 1146. As it would have been futile for LG Chem to reargue its position, requiring exhaustion here is inappropriate because it would serve "no agency or judicial interest." *Id.*

[10] LG Chem glosses over the substance of the rejected information, characterizing it as "new factual information that directly rebutted the new factual allegations regarding the cost allocation that [the Coalition] made in its pre-preliminary comments," ECF 38, at 9, while the government and the Coalition ignore it altogether.

based methodology is consistent with generally accepted accounting principles in Korea, Appx1444 (LG Chem submission), and (2) the Chinese acetone prices used in LG Chem's methodology were not, in fact, volatile and distortive, as compared to prices in other markets. Appx1446–1447 (LG Chem submission); Appx1471–1473 (LG Chem defending its submission); Appx 1484 (Commerce directing LG Chem to withdraw identified portions of LG Chem's submission).

The first of these issues—that LG Chem's value-based methodology is consistent with generally accepted accounting principles in Korea—is not in dispute. Remanding for Commerce to consider this factual information could make no difference to the outcome. Likewise, the second issue—the volatility of Chinese market prices—is no longer in dispute, as LG Chem does not challenge Commerce's conclusion in its preliminary determination that Chinese market prices *were* distortive. Remanding for Commerce to consider this information would be pointless—even under LG Chem's theory of the case, which focuses on the reasonableness of its value-based methodology *as adjusted* with Southeast Asian prices. As a result, any error by the Department in rejecting LG Chem's factual information was harmless. *See above* note 8.

## III.

The final issue raised by LG Chem's motion is Commerce's calculation of the company's general and administrative expenses on a company-wide basis. Appx1584. LG Chem argues that because acetone accounted for a small fraction of its total sales of all

products, one-half of one percent, Commerce should have calculated LG Chem's general and administrative expenses on a more tailored "division-specific" basis. ECF 38, at 49–51; ECF 39, at 25–27. Specifically, LG Chem argues that Commerce should have used the profit and loss statement for the company division that produced acetone—a division that accounted for about 55 percent of total sales—"and excluded the very different and unrelated expenses for the other LG Chem divisions that had nothing to do with manufacturing a basic chemical like acetone." ECF 38, at 49.

The government and the Coalition disagree, arguing that consistent with both the law and its practice, Commerce properly calculated LG Chem's general and administrative expenses on a company-wide basis. ECF 37, at 33–36; ECF 36, at 21–22.

The "cost of production" under 19 U.S.C. § 1677b(b)(3) includes "an amount for selling, general, and administrative expenses based on actual data pertaining to production and sales of the foreign like product by the exporter in question . . . ." *Id.* § 1677b(b)(3)(B).[11] LG Chem argues that "the statute

---

[11] As explained above, the statute requires that Commerce base its cost of production calculations under § 1677b(b)(3)—including the calculation of "general and administrative expenses" under subparagraph (B)—on the exporter's records if the two conditions of 19 U.S.C. § 1677b(f)(1)(A) are satisfied. Nevertheless, the parties have briefed the question of Commerce's calculation of "general and administrative expenses" under § 1677b(b)(3)(B) without any discussion of how § 1677b(f)(1)(A) informs—or should have informed—that

requires a focus on the 'foreign like product'—the product being investigated—and not overall production operations," and that by "ignoring the divisional breakdown of [general and administrative] expenses, Commerce wandered too far afield from the product under investigation." ECF 38, at 50.

The government argues, however, and on reply the company does not dispute, that *Chevron* deference applies to the government's interpretation of § 1677b(b)(3). *See* ECF 37, at 33. "Under that standard, a court must defer to an agency's construction of a statute governing agency conduct if the court finds that the statute in question is ambiguous and the agency's interpretation is reasonable." *Cathedral Candle*, 400 F.3d at 1361.

Section 1677b(b)(3)(B) is ambiguous, in that it does not speak "to the precise question at issue," *id.* at 1362, i.e., how general and administrative expenses" are to be allocated to a "foreign like product," 19 U.S.C. § 1677b(b)(3)(B). As a result, the court must defer to Commerce's interpretation if "the agency's answer is based on a permissible construction of the statute." *Cathedral Candle*, 400 F.3d at 1362 (quoting *Chevron*, 467 U.S. at 843).

Commerce's reading is surely permissible, if not the better reading. The CIT has previously construed

---

calculation. Accordingly, the court addresses Commerce's treatment of general and administrative expenses as the parties have, in isolation and without regard to § 1677b(f)(1)(A).

"general and administrative expenses" to "relate to the activities of the company as a whole rather than to [the] production process." *U.S. Steel Grp. a Unit of USX Corp. v. United States*, 998 F. Supp. 1151, 1154 (CIT 1998) (quoting *Rautaruukki Oy v. United States*, 19 CIT 438, 444 (1995)). LG Chem's statutory interpretation challenge therefore fails.

That leaves the company's substantial evidence challenge to Commerce's allocation of general and administrative expenses on a company-wide rather than division-specific basis. Before the Department, LG Chem argued that (1) it is a large and diversified chemical manufacturer; (2) the general and administrative expenses of manufacturing basic chemicals such as acetone are different from LG Chem's other expenses; (3) most of the company's general and administrative expenses are not allocated, but tracked separately by division; (4) the company uses this allocation system in the ordinary course of business; and (5) the divisional general expenses more closely resemble the general and administrative expenses of producing acetone. ECF 38, at 51. And so, LG Chem asked that Commerce use its division-specific financial statement to calculate general and administrative expenses.

Commerce, however, declined, explaining that general and administrative expenses "by their nature are indirect expenses incurred by the company as a whole, and are not directly related to a process or product." Appx1585. Commerce accordingly included company-wide general and administrative expenses "as recorded on company-wide financial statements" in its

calculation despite LG Chem's effort to exclude them. *Id*.; *cf*. Appx1583 (summarizing LG Chem's arguments for excluding the broader data).

Here, Commerce weighed the evidence and chose to base its general and administrative calculations on LG Chem's company-wide financial statements rather than its division-specific financial statements. In so doing, Commerce captured all the company's general and administrative expenses in its calculations. Whether or not the court agrees with that determination, it is reasonable and supported by substantial evidence; the court has no basis upon which to remand and require Commerce to recalculate LG Chem's general and administrative expenses on a division-specific basis merely because acetone accounted for one-half of one percent of the company's sales.

## Conclusion

For the reasons explained above, the court denies LG Chem's motion for judgment on the agency record and grants judgment on the agency record in favor of the government and the Coalition. *See* USCIT R. 56.2(b) (authorizing the court to enter judgment in favor of a party opposing a motion for judgment on the agency record, "notwithstanding the absence of a cross-motion"). A separate judgment will enter. *See* USCIT R. 58(a).

Dated:  August 13, 2021          /s/ *M. Miller Baker*
         New York, NY          M. Miller Baker, Judge